```
      IN THE UNITED STATES DISTRICT COURT
   FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
```

**ROBIN JONES,**

       **Plaintiff,**

**v.**                   **//   CIVIL ACTION NO. 1:15CV154**
                                                   **(Judge Keeley)**

**BERNADETTE JUNGBLUT,**
**and ELIZABETH DOOLEY,**

       **Defendants.**

**MEMORANDUM OPINION AND ORDER GRANTING IN**
**PART AND DENYING IN PART DEFENDANTS' MOTION TO**
**DISMISS SECOND AMENDED COMPLAINT [DKT. NO. 24]**

Pending before the Court is the motion to dismiss the second amended complaint filed by the defendants, Bernadette Jungblut ("Jungblut") and Elizabeth Dooley ("Dooley") (collectively "defendants") (dkt. no. 24). For the reasons that follow, the Court **GRANTS in PART** and **DENIES in PART** the defendants' motion.

## I. BACKGROUND[1]

Robin Jones ("Jones") was a tenured Assistant Professor at West Virginia University ("WVU"), where she held the position of Director of the First-Year Seminar and Instructional Support. Additionally, she held the secondary appointment of Resident Faculty Leader ("RFL"). During all times relevant to this case, Jungblut was the Executive Director of the Academic Success

---

[1] These facts are taken from the Second Amended Complaint (dkt. no. 22) filed by the plaintiff, Robin Jones ("Jones"), which is the operative complaint in this action.

**JONES v. JUNGBLUT, ET AL.**                                    **1:15CV154**

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION TO DISMISS SECOND AMENDED COMPLAINT [DKT. NO. 24]**

Initiatives and the First-Year Experience for WVU, and Dooley was the Associate Provost for Undergraduate Academic Affairs for WVU.

On or about December 2, 2014, WVU verbally notified Jones that it was not renewing her secondary appointment as RFL for fiscal year 2015-2016. Following that notice, in accord with the West Virginia Public Employees Grievance Procedure, Jones filed a level-one grievance challenging the nonrenewal of her RFL appointment. In her grievance, Jones asserts that WVU violated Title 133, Series 9, § 3.3 of the West Virginia Higher Education Policy Commission's procedural rules ("Rules"), by failing to notify her of the RFL nonrenewal decision in writing by certified mail at least one year before the expiration of her appointment. Dkt. No. 22 at 3.

WVU conducted a level-one grievance conference on January 26, 2015, at which Jones appeared without legal representation. Ultimately, her grievance was denied by WVU's Chief Grievance Administrator, Sue Keller ("Keller"), in a written order dated February 12, 2015. That order of denial stated that Jones's assumption that her tenure would carry over to her secondary position as RFL was mistaken. Keller stated that, according to WVU's Associate Provost, the Rules only applied to tenured or

**JONES v. JUNGBLUT, ET AL.**                                          **1:15CV154**

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION TO DISMISS SECOND AMENDED COMPLAINT [DKT. NO. 24]**

tenure-track positions, not to secondary non-teaching appointments. Consequently, the one-year notice requirement did not apply to Jones's RFL position. In addition, Keller noted that, for purposes of the secondary RFL appointment, Jones was an at-will employee with no property interest in that position. Keller then concluded that, "[h]aving no protected property interest in the [secondary] RFL position . . . Grievant [Plaintiff] has no continuing right to this position." Dkt. No. 22 at 4 (brackets in original).

Forty-seven days following that denial, Jones was summoned to Jungblut's office, where she was provided with a letter dated April 1, 2015 (the "letter") terminating her after forty (40) years of service. The letter provided no reason for the termination,[2] nor was it issued by certified mail one year before the expiration of her appointment, as required for tenured faculty pursuant to Title 133, Series 9 of the Rules. After reading the letter, Jones

---

[2]According to the complaint, the entirety of the letter reads as follows:
Dear Professor Jones:
Thank you for your service to Undergraduate Academic Affairs, the University College, and Academic Success Initiatives and the First-Year Experience. This letter serves as notice that we do not intend to reappoint you to the position, Director of the First-Year Seminar and Instructional Support, for FY 2015-2016."
Dkt. No. 22 at 4.

inquired of Jungblut: "Does this mean that as of July 1st, I no longer have a job?" Jungblut replied; "That is correct." Id. at 4. According to Jones, neither the defendants nor any other WVU representative informed her that "efforts would be made to reassign her to instructional or non-instructional duties commensurate with her experience." Id. Jones claims that Jungblut and Dooley were instrumental in the decision to terminate her.

Jones filed her first complaint in Monongalia County Circuit Court on July 24, 2015, naming as defendant the WVU Board of Governors ("the Board"), and "seek[ing] relief for [her] capricious, retaliatory and unlawful termination." Id. at 5. The Board removed the case to this Court on September 4, 2015, citing federal question jurisdiction and supplemental jurisdiction over the state law claims in the complaint.

Rather than answer the complaint, on September 10, 2015, the Board moved to dismiss. On September 28, 2015, Jones filed an amended complaint adding Jungblut and Dooley as defendants. The amended complaint was filed pursuant to Fed. R. Civ. P. 15(1)(B) because Jones filed it within twenty-one (21) days of the filing of the Board's 12(b) motion to dismiss.

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT [DKT. NO. 24]**

When she filed her amended complaint, Jones also moved to stay the deadline on which she had to respond to the Board's motion to dismiss (dkt. no. 8). After Jones filed her amended complaint, however, the Court denied as moot the Board's pending motion to dismiss the original complaint (dkt. no. 4). Then, on October 12, 2015, the Board moved to dismiss the amended complaint (dkt. no. 12).

On November 19, 2015, the Court conducted a status conference with the parties, during which Jones moved to dismiss the Board as a party without prejudice and sought leave to amend her complaint for a second time. Without objection, the Court granted both motions and ordered Jones to file the second amended complaint no later than December 12, 2015. It also denied as moot the Board's motion to dismiss the amended complaint. Id.

Jones's second amended complaint asserts two causes of action:

- COUNT I: Violation of Rights Guaranteed Under the First Amendment of the United States Constitution (Brought Under Authority of 42 U.S.C. § 1983)

- COUNT II: Violation of Rights Guaranteed Under the Fourteenth Amendment of the United States Constitution (Brought Under Authority of 42 U.S.C. § 1983)

Count I alleges that WVU retaliated against Jones, terminating her because she had filed a grievance, and, that by doing so, it

violated the legitimate exercise of her First Amendment rights. Count II alleges that her employment constituted a property right under the Fourteenth Amendment, and that her termination without both procedural and substantive due process violated that right.

Pursuant to Fed. R. Civ. P. 12(b)(6), on February 4, 2016, the defendants moved to dismiss the second amended complaint. They argue that Jones's second amended complaint fails to state a claim upon which relief can be granted. Dkt. No. 24. The motion is fully briefed and ripe for decision. For the reasons that follow, the Court **GRANTS in PART** and **DENIES in PART** the motion.

## II. STANDARD OF REVIEW

In reviewing the sufficiency of a complaint, a district court "'must accept as true all of the factual allegations contained in the complaint.'" Anderson v. Sara Lee Corp., 508 F.3d 181, 188 (4th Cir. 2007) (quoting Erickson v. Pardus, 551 U.S. 89, 94 (2007)). While a complaint does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than mere labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Indeed, courts "are not bound to accept as true a

legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). In considering whether the facts alleged are sufficient, "a complaint must contain 'enough facts to state a claim to relief that is plausible on its face.'" Anderson, 508 F.3d at 188 (quoting Twombly, 550 U.S. at 547).

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). "But in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)," so long as "all facts necessary to the affirmative defense 'clearly appear[] on the face of the complaint.'" Goodman v. Praxair, Inc., 494 F.3d 458, 464 (4th Cir. 2007) (quoting Richmond, Fredericksburg & Potomac R.R. v. Forst, 4 F.3d 244, 250 (4th Cir. 1993)).

### III. ANALYSIS

In their motion to dismiss Count I, the defendants contend that Jones's § 1983 claim must fail because her grievance does not qualify as protected speech under the First Amendment. As to Count

II, they contend that Jones had no property interest in her position with WVU; if she had such an interest, they did not deprive her of any property interest because Jones was afforded all of the process to which she was due.

**A.  Count I - First Amendment Claim**

Public employees are "entitled to be protected from firings, demotions and other adverse employment consequences resulting from the exercise of their free speech rights, as well as other First Amendment rights."[3] Alderman v. Pocahontas Cty. Bd. of Educ., 675 S.E.2d 907, 916 (W. Va. 2009) (citing Pickering v. Board of Education, 391 U.S. 563 (1968)). When determining whether a public employee's speech is protected, courts must weigh "'the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.'" Lane v. Franks, 134 S. Ct. 2369, 2374 (2014) (quoting Pickering, 391 U.S. at 568).

---

[3]The First Amendment provides:
Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.
U.S. Const. amend. I.

**JONES v. JUNGBLUT, ET AL.**              **1:15CV154**

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION TO DISMISS SECOND AMENDED COMPLAINT [DKT. NO. 24]**

In Lane, the Supreme Court of the United States utilized the following two-part test to determine whether the First Amendment protects an employee's speech:

> "The first requires determining whether the employee spoke as a citizen on a matter of public concern. If the answer is no, the employee has no First Amendment cause of action based on his or her employer's reaction to the speech. If the answer is yes, then the possibility of a First Amendment claim arises. The question becomes whether the relevant government entity had an adequate justification for treating the employee differently from any other member of the general public."

134 S. Ct. at 2378 (quoting Garcetti v. Ceballos, 547 U.S. 410, 418 (2006) (citations omitted)). Thus, if the speech on which an employee relies to support a First Amendment claim is not a matter of public concern, there is no protection. See Ridpath v. Board of Governors Marshall University, 447 F.3d 292, 316, n. 26 (4th Cir. 2006) ("[W]hether the employee's speech addressed a matter of public concern, is '[t]he threshold question.'" (quoting Rankin v. McPherson, 483 U.S. 378, 384 (1987))).

Whether the speech is of public concern is purely a question of law to be determined by a court. Huang v. Board of Governors of University of North Carolina, 902 F.2d 1134, 1140 (4th Cir. 1990) (citations omitted). The Fourth Circuit has clearly stated that "a public employee's expression of grievances concerning his own

9

employment is not a matter of public concern." Id.; see also Givens v. O'Quinn, 121 Fed. Appx. 984, 992 (4th Cir. 2005) (quoting Huang). Moreover, The Supreme Court has cautioned that grievances relating solely to an employee's own individual employment should not be transformed into constitutional claims. See Connick v. Myers, 461 U.S. 138, 154 (1983).

The Supreme Court has also determined that a public employee's grievance does not amount to a matter of public concern simply by virtue of the employee's public employment:

> Of course in one sense the public may always be interested in how government officers are performing their duties. But as the [] test has evolved, that will not always suffice to show a matter of public concern. A petition that "involves nothing more than a complaint about a change in the employee's own duties" does not relate to a matter of public concern and accordingly "may give rise to discipline without imposing any special burden of justification on the government employer." The right of a public employee under the Petition Clause is a right to participate as a citizen, through petitioning activity, in the democratic process. It is not a right to transform everyday employment disputes into matters for constitutional litigation in the federal courts.

Borough of Duryea, Pa. v. Guarnieri, 564 U.S. 379, 399 (2011) (internal citations omitted).

It thus is clear that speech implicating a public matter necessarily must address issues beyond a grievant's own individualized interests. For example, in Lane, the Supreme Court

held that speech by a former director of a state program for underprivileged youth was protected because it related to another employee charged with stealing public funds. 134 S. Ct. at 2375. Similarly, in Huang, it was undisputed that Huang's whistle-blowing was a matter of public concern because it related to an "improper business arrangement between two [other faculty] members involving state funds." 902 F.2d 1140.

By contrast, in Connick, the Supreme Court viewed a questionnaire circulated by an assistant district attorney to her co-workers as unprotected speech because it purported to ask questions about inter-office policy relating solely to her transfer. 461 U.S. at 154 (declining to "constitutionalize the employee grievance . . . presented [t]here"). Similarly, in Brooks v. Arthur, the Fourth Circuit addressed claims of retaliation by two corrections officers who had complained that they were treated unfairly by superior officers. 685 F.3d 367, 369-70 (4th Cir. 2012). After reviewing the complaints, the court dismissed the § 1983 claims, finding that the officers' "speech pertained to personal grievances and complaints about conditions of employment rather than broad matters of policy meriting the protection of the First Amendment." Id. at 371.

Here, Jones contends that West Virginia created the tenure system to "ensure academic freedom" and "to enable the institutions to perform their societal obligation as established by the Legislature." Dkt. No. 28 at 5. Although she was employed at a public university, and a properly functioning tenure system may be a matter of public concern, Jones's grievance pertained solely to her own personal employment. See, e.g., Robinson v. Balog, 160 F.3d 183, 189-90 (4th Cir. 1998) ("Every public employee's job by definition affects 'the public,' but every public employee's grievance is not thereby of public concern.").

The entirety of the allegedly protected speech at issue is contained in Jones's grievance and relates entirely to the non-renewal of her secondary RFL appointment. Jones does not allege that any matter beyond her own personal interest in that appointment is contained within the grievance. Indeed, were her grievance "'released to the public, [it] would convey no information at all other than the fact that a single employee is upset with [her termination].'" Brooks, 685 F.3d at 373 (quoting Connick, 461 U.S. at 148).

For the reasons discussed, the Court concludes that Jones's grievance was not a matter of public concern and therefore is not

**JONES v. JUNGBLUT, ET AL.** 1:15CV154

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION TO DISMISS SECOND AMENDED COMPLAINT [DKT. NO. 24]**

protected speech under the first part of the Lane test. As that is the threshold question, her First Amendment claim necessarily fails. See Ridpath, 447 F.3d at 316.

**B.   Count II - Fourteenth Amendment Claim**

In Count II, Jones alleges that she had a property interest protected under the Fourteenth Amendment,[4] and therefore was entitled to the due process protections it affords. The defendants argue that Jones did not have a protected property interest, but that even if she did there was no constitutional violation. They further argue that she was provided all of the process due her under the Fourteenth Amendment. Dkt. No. 25 at 16-17.

To succeed on a § 1983 claim for a deprivation of property without due process in violation of the Fourteenth Amendment, Jones must establish (1) that she has a constitutionally protected property interest, and (2) that she has been deprived of that interest by state action. See Stone v. Univ. of Md. Med. Sys.

---

[4]The Fourteenth Amendment provides:
No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.
U.S. Const. amend. XIV, § 1.

Corp., 855 F.2d 167, 172 (4th Cir. 1988); Board of Regents v. Roth, 408 U.S. 564, 569-70 (1972). Persons receiving a "benefit created and defined by a source independent of the Constitution, such as state law," are vested with a property interest entitled to procedural due process protections under the Fourteenth Amendment. Huang, 902 F.2d at 1141 (citing Roth, 408 U.S. at 577; Bradley v. Colonial Mental Health & Retardation Servs. Bd., 856 F.2d 703, 707 (4th Cir. 1988)).

Here, regarding her primary tenured teaching position, Jones was contractually employed with WVU and clearly protected under the tenure system pursuant to the Rules. Therefore, her "position as a tenured professor is indisputably a property right entitled to procedural due process protection." Huang, 902 F.2d at 1141.

The defendants argue that the second amended complaint fails to allege that Jones was deprived of tenure or that they refused to compensate her accordingly. Dkt. No. 25 at 16. In support, they argue that Jungblut's letter simply informed Jones that she would not be reappointed to the specific position of "Director of First-Year Seminar and Instructional Support." Id. Citing Huang and Parkman, they further contend that Jones did not have a protected

property interest in a specific position, or even the physical possession of a job.

It appears that the defendants are attempting to argue that the letter did not notify Jones she was being terminated from her tenured employment and would no longer serve in any position or be compensated. Rather, the letter simply advised Jones that she would no longer hold the same specific position. Such a reading of the allegations in Jones's second amended complaint is untenable. The letter opened by thanking Jones for her service to WVU, which she could reasonably infer to mean that her service was coming to an end. While it is true the letter informed Jones that she would not be reappointed to a particular position, it is worth recalling that position was the only tenured position she had held. Further, the letter provided no indication that another position was available, or that the defendants intended to place her elsewhere within the University, or even to compensate her nonetheless. Indeed, as Jones has alleged, the purpose of the letter was made clear after she inquired of Jungblut: "Does this mean that as of July 1st, I no longer have a job?", to which Jungblut replied, "That is correct." Dkt. No. 22 at 4. Both because Jones had a protected property interest in her tenured position and her second amended

complaint adequately pleads that the defendants denied that interest, the Court concludes that she has stated a claim upon which relief may be granted.

The defendants also contend that the grievance process provided Jones with all the procedural due process to which she was entitled.[5] Having already concluded that Jones has adequately pled a due process claim in Count II, the Court need not address this contention at this early stage of the litigation. "[A] motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Martin, 980 F.2d at 952.

Furthermore, this is not one of those "rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint," such that, "the defense may be reached

---

[5]The defendants properly note that, although Jones would be entitled to procedural due process, it is unlikely that she would also be entitled to substantive due process protections. See Huang, 902 F.2d at 1142, n. 10 ("Unlike rights subject to procedural due process protection, which arise from sources other than the Constitution, substantive due process rights arise solely from the Constitution. Dr. Huang's entitlement to a position in BAE, if is exists, is essentially a state law contract right, not a fundamental interest embodied in the Constitution." (citation omitted) (emphasis added)).″

by a motion to dismiss filed under Rule 12(b)(6)." Goodman v. Praxair, Inc., 494 F.3d 458, 464 (4th Cir. 2007) (quoting Richmond, Fredericksburg & Potomac R.R. v. Forst, 4 F.3d 244, 250 (4th Cir. 1993)). Too many unanswered questions surrounding Jones's termination and the grievance process remain at this point. Accordingly, dismissal of Count II without further factual development would be premature. The Court therefore **DENIES** the defendants' motion to dismiss Count II of the second amended complaint.

## IV. CONCLUSION

For the reasons discussed, the Court **GRANTS in PART** the defendants' motion and **DISMISSES WITH PREJUDICE** Count I of the second amended complaint. It **DENIES in PART** the defendants' motion to dismiss Count II of the amended complaint.

It is so **ORDERED.**

The Court directs the Clerk to transmit copies of this Order to counsel of record and to enter a separate judgement order.

DATED: August 25, 2016

/s/ Irene M. Keeley
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE